# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. JACOBSON,<br><br>      Petitioner,<br><br>vs.<br><br>PAT BARKER,<br><br>      Respondent. | 1:04-cv-06263-LJO-TAG HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

At time of filing his petition, Petitioner was in custody of the California Department of Corrections and Rehabilitation as a result of a November 7, 2001 conviction in the Superior Court of California, County of Kern (the "Superior Court") for second-degree burglary (Cal. Pen. Code § 460(b)), with "true" findings regarding four separate enhancements pursuant to Penal Code § 667.5(b)(prior prison term). (Doc. 13, Exh. 3). Petitioner was sentenced to an aggregate term of seven years in prison. (Id.; Reporter's Transcript ("RT") 204).

On April 29, 2002, Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), raising the sole issue of the propriety of instructing the

1  jury with CALJIC No. 17.41.1. (Doc. 13 , Exh. 2).  On October 16, 2002, the 5th DCA affirmed
2  Petitioner's conviction in an unpublished opinion. (Id., Exh. 3).  Petitioner did not file a petition
3  for review in the California Supreme Court.

4        On February 24, 2003, Petitioner filed a petition for writ of habeas corpus in the Kern
5  County Superior Court, which was denied on February 7, 2003.  (Doc. 13, Exh. 4).  On February
6  24, 2003, Petitioner filed a habeas petition in the 5th DCA.  (Doc. 13, Exh. 5) On May 16, 2003,
7  the 5th DCA ruled that Petitioner had made a prima facie showing justifying an evidentiary
8  hearing. (Doc. 13, Exh. 6).  Subsequently, the 5th DCA ordered the Kern County Superior Court
9  to comply by conducting the evidentiary hearing.  (Doc. 13, Exh. 7).

10        The Superior Court conducted the evidentiary hearing on September 30, 2003, receiving
11  testimony and argument, and thereafter denying the writ.  (Doc. 13, Exhs. 9 & 10).  Petitioner
12  filed a petition in the California Supreme Court on October 28, 2003, after being notified by the
13  5th DCA that it had transferred his petition to the Superior Court for determination and that he no
14  longer had a petition pending in the 5th DCA. (Doc. 13, Exhs. 11 & 12).  On August 25, 2004,
15  the state supreme court denied the petition.  (Id., Exh. 12).

16        On September 15, 2004, Petitioner filed the instant federal petition.  (Doc. 1).  On
17  January 28, 2005, Respondent filed a response.  (Doc. 13).  On February 7, 2005, Petitioner filed
18  a traverse.  (Doc. 15).  Respondent concedes that Petitioner has exhausted the sole ground
19  contained in this petition. (Doc. 13, p. 3).

## FACTUAL BACKGROUND

21  Don Martin, the facility services coordinator at the Henrietta Weill Memorial Child
22  Guidance Clinic in Bakersfield, California, testified that, as the employee in charge of security at
23  the facility, he was notified on July 26, 2001, at around 10:45 p.m. by the security company
24  monitoring the facility that it had received an indication that someone had entered the building
25  through the south entrance.  (RT 90, 100).   This was significant because all employees entered
26  through another entrance and therefore Martin knew this could not simply be the case of an
27  employee improperly coding in his or her entrance code.  (RT 91).  Martin told the security
28  company that he wished to have the police notified.  (RT 90).

1    When Martin arrived, the police were already at the south entrance and Martin noticed
2  that lights were on in the building, which was unusual. (RT 91).  Martin opened the building
3  door for the officers, and they entered the building. (RT 91).  The officers were about ten to
4  fifteen feet ahead of Martin when he saw Petitioner coming around the corner. (RT 91).  The
5  police immediately detained him. (Id.).  Martin testified that Petitioner had no right or
6  permission to be inside the building. (RT 92).  Martin surmised that Petitioner had been startled
7  because, when Martin had opened the door for the officers, that had triggered the alarm which
8  began to "beep" loudly. (RT 93).

9    In surveying the building, Martin noted that many drawers were open at employees'
10  desks, which was unusual. (RT 93).  Although Martin did not see any external signs of forced
11  entry, police called his attention to scratch marks on the latch to the south entrance door. (RT
12  100, 104).  Martin believed the scratches to be "fresh" because the lock was brass, which starts to
13  darken within a couple of weeks after being damaged. (RT 120).  Martin did not observe
14  anything missing from the facility; however, the next day he was told that some change was
15  missing from someone's desk. (RT 118).

16    Ted Olsen, a Bakersfield Police officer, testified that he had been dispatched to the Weill
17  Institute on the burglary call. (RT 122).  Olsen, and another officer, Herman, arrived separately
18  at about the same time. (RT 123).  Olsen tried to get in through the north entrance but could not.
19  (RT 124).  When Martin arrived, he unlocked the south door and the two officers entered the
20  building. (RT 124 ).  Herman and Olsen walked down the hallway and into a large area filled
21  with cubicles, at which time Petitioner came walking up to the officers at a fast pace. (RT 125).
22  Petitioner had in his possession a pocket knife. (RT 126).  The knife had small "dings" in the
23  blade. (RT 128).

24    Petitioner, who represented himself in this trial, did not testify, but he did call Robert
25  Wall, his private investigator, who testified that he went to the facility after the incident and
26  observed that the front doors stand slightly ajar because of the air pressure from the air-
27  conditions unit. (RT 143).  Wall talked to the superintendent of the building, who confirmed
28  this. (RT 144).

# DISCUSSION

## I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d). Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The original petition was filed on September 15, 2004, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

## II. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme

Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005)(citing Williams v. Taylor, 529 U.S. at 405). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141. Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003)(citing Williams v. Taylor, 529 U.S. at 409). Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637(citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004). The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are presumed to be correct, and such presumption of correctness may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

///

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).-

**III. Petitioner's Substantive Claim Should Be Denied.**

    **Ground One**    **Whether The Prosecution Improperly Withheld Information Concerning Its Witness, Depriving Petitioner Of His Constitutional Rights**

Petitioner argues that the prosecution withheld crucial information regarding a prosecution witness, former Bakersfield Police Officer Ted Olson, in violation of Brady v. Maryland, 373 U.S. 83 (1963). For the reasons set forth below, the Court rejects Petitioner's claim.

The United States Supreme Court has held that a defendant's due process rights are violated if prosecutorial misconduct renders a trial "fundamentally unfair," that is, if the misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 183 (1986); Drayden v. White, 232 F.3d 704, 711 (9th Cir.2000).

The Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is *material* either to guilt or to punishment. United States v. Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83 (1963). A so-called "Brady" claim contains three essential elements or components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that

6

evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Banks v. Dretke, 540 U.S. 668, 691 (2004)(quoting Strickler v. Greene, 527 U.S. 263, 281-282 (1999)).

A prosecutor violates the constitutional duty of disclosure if his omission is sufficiently significant to result in the denial of the defendant's right to a fair trial. Agurs, 427 U.S. at 106-107. The duty exists regardless of whether a specific request has been made by the defense, or whether the suppression was intentional or inadvertent. Id. at 110.

Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. A mere reasonable possibility is insufficient to establish prejudice. Strickler, 527 U.S. at 290.

To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987)(quoting Bagley, 473 U.S. 667). The Ninth Circuit has stated that prosecutorial misconduct violates due process only if evidence is presented which "taken as a whole" gives a jury a "false impression." Downs v. Hoyt, 232 F.3d 1031, 1038 (9th Cir.2000)(quoting Alcorta v. Texas, 355 U.S. 28, 31 (1957)(per curiam)).

The Court must next apply these principles to the facts of this case. Here, the evidentiary hearing conducted as part of the Petitioner's state habeas proceedings indicates the following. James James, a Bakersfield Police officer, testified that he had been a detective assigned to the vice and narcotics squad in the fall of 2001. (Doc. 13, Exh. 10, Evidentiary Hearing Transcript ("EHT") 5). He first received information that Officer Olsen may be involved in illegal activity around October 1, 2001. (Id.). James received information from a reliable confidential informant that Olsen and his girlfriend, Tracy Elliott, were involved in narcotics activity and were possibly in possession of a stolen vehicle. (EHT 5-6). Between October 1, 2001, and October 11, 2001, James and other members of his unit conducted surveillance involving Olsen and Elliott. (EHT 6).

Subsequently, there was a period of "little or no activity between the eleventh and October 25, 2001." (Id.). In late October, James contacted a Department of Motor Vehicles investigator to get information discretely regarding the stolen vehicle. (EHT 7). James was trying to be discrete because of the sensitivity of the investigation. (Id.). James then contacted the Oxnard Police Department on October 31, 2001, which provided "information that was pertinent" to the investigation. (Id.).

As the case agent in charge of the investigation, James had discussed with other members of his unit the need for secrecy and the only people who had knowledge of the investigation were members of James' unit, and their superiors in the police department. (EHT 8). To James' knowledge, no one had talked to the Kern County District Attorney's Office prior to the first time he contacted that office, which would have been after October 31, 2001, and before November 5, 2001, the date James obtained arrest warrants for Olsen and Elliott. (EHT 9). At that time, James notified former Deputy District Attorney Joy Lane, who referred James to Mr. Tauzer, also in the district attorney's office. (EHT 9-10). Tauzer eventually filed the action against Olsen on November 8, 2001. (EHT 10). James testified that no one in the police department made any contact with anyone at the prosecutor's office prior to October 11, 2001 about their suspicions regarding Olsen. (Id.). He also explained that, due to the extreme secrecy of the investigation, nothing would have been put in Olsen's personnel file regarding the investigation until the arrest warrant was issued. (EHT 13).[1]

Mark Herman, a Bakersfield Police officer who accompanied Olsen to the Weill Institute on the night of the burglary, testified that he arrested Petitioner for suspicion of second-degree burglary and also arrested him based on his parole status under Penal Code § 3056. (EHT 15). Petitioner was booked based on both offenses. (Id.). Herman learned of Petitioner's parole status from Petitioner himself several minutes after initially contacting him. (EHT 16).

Petitioner presented no evidence at the evidentiary hearing. (EHT 16).

---

[1] James was not certain but believed that Olsen later pleaded guilty to non-narcotics charges, possibly related to the stolen vehicle. (EHT 13).

In its ruling on the habeas petition, the trial court focused on "what was known [to the police] and what the stage of their investigation was at the time of the trial, because that is the critical point in my mind at the time of the trial, what was known, who knew it, and was there sufficient information that should have been provided to [Petitioner] regarding this witness." (EHT 25). The trial court went on to find as follows:

> *[T]here was not at that point anything more than a suspicion that there may be something going on. And a suspicion does not constitute information that needs to be revealed. If the police do not have probable cause in my mind to proceed and all they have is a report that they are exploring, they are not called upon to either remove...Mr. Olsen from his activities. They were not in a position to reveal to the District Attorney's Office anything that would have caused him to not be the testifier in this case and to substitute the other officer to testify who was present at the events and the arrest.*
>
> *I'm going to find that while–if they had known that he had committed a violation of the law or a felony violation such that it would have been suitable to use that information to impeach Mr. Olsen, they would have been under an obligation to reveal it. They were under an obligation to reveal it when it became known if it was relevant to the trial. But at the point of the trial when the officer was testifying, there is no evidence before me that the District Attorney's Office had any information regarding anything about Officer Olsen, and the Bakersfield Police Department's information at that point was so preliminary and so undeveloped that it did not rise to the level of information that needed to be revealed, nor did it rise to the level that it needed to be used to pull Mr. Olsen from his police activities and thereby signaling that there was a problem.*

(EHT 25-26)(Emphasis supplied.)

Accordingly, the trial court denied the habeas petition. (Id.). Subsequently, the 5th DCA indicated in a letter to Petitioner that it had transferred the petition to the trial court for the determination following the evidentiary hearing. (Doc. 13, Exh. 11).

As mentioned above, a state court's factual findings are presumed to be correct, and such presumption of correctness may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A finding that no suppression has occurred under Brady is a finding of fact entitled to the presumption of correctness under the AEDPA. Ortiz v. Stewart, 149 F.3d 923, 935 (9th Cir. 1998). This Court is precluded from granting habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless either the adjudication is (1) contrary to or an unreasonable application of clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

Reviewing the evidence presented at the evidentiary hearing recounted above, and applying the deference required by the AEDPA, this Court cannot conclude that the state court's findings of fact were unreasonable or that Petitioner has rebutted, by clear and convincing evidence, the presumption of correctness imposed by § 2254(e)(1). Petitioner offered no evidence at the hearing, relying exclusively on cross-examination of James and Herman. The evidence presented by the State of California supported the trial court's finding that, at the time of Petitioner's trial, the investigation into Olsen's activities had only recently commenced, that it was preliminary, and that the concerns about Olsen amounted to nothing more than "suspicions" at that early point in the investigation. It was only later, sometime on or after October 31, 2001, when crucial information was apparently provided by the Oxnard Police Department, and before November 5, 2001, when Mr. Tauzer authorized the arrest warrant for Olsen, that the suspicions became solid evidence that may have required disclosure. Thus, the evidence amply supports the state court's findings that, at the time of trial, there was in effect nothing to disclose to Petitioner. Since this Court must, under those circumstances, defer to the state court ruling on that fact issue, the Court must also conclude that an essential element of a Brady claim is absent, and thus there was no constitutional violation. 28 U.S.C. § 2254(d), (e)(1).

However, even assuming, arguendo, that the Bakersfield Police Department had developed sufficient evidence on which to charge Olsen before or during Petitioner's trial, and assuming that such information was attributable to the prosecution as part of the "unitary" team representing the State of California against Petitioner, and, finally, assuming that the State had a duty to disclose such information but did not, the state court's determination that such a failure to disclose was not material is, in this Court's view, supported by the record and therefore entitled to deference.

"Evidence impeaching the testimony of a government witness falls within the Brady rule when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Brumel-Alvarez, 991 F.2d 1452, 1458 (9th Cir. 1992).

Although Olsen testified as one of the two arresting officers that he found Petitioner inside the Weill Institute without authorization, his testimony was secondary to the highly

prejudicial testimony of Don Martin, the primary prosecution witness. Martin also testified that he saw Petitioner inside the facility without authorization. Martin testified to the security measures in effect in the building, the points of ingress into the building, and the significance of the electronic alarm signifying that the south entrance had been breached. Martin also testified to seeing the scratch marks on the door presumably made when Petitioner attempted to obtain access to the building.

Under such circumstances, Martin's testimony alone would have been sufficient to convict Petitioner of second-degree burglary, and Olsen's testimony was therefore essentially cumulative. While it is conceivable that one could believe that impeachment of Olsen, the only other witness, was somehow material, the issue before this Court is not whether potentially suppressed evidence was in fact material, *but whether it was unreasonable for the state court to determine that it was not*. 28 U.S.C. § 2254(d). In light of the highly prejudicial nature of Martin's testimony standing alone, and given the essentially corroborative nature of Olsen's testimony, the state courts were not unreasonable in their determination that Petitioner failed to establish that there was a reasonable probability that the purported suppression of impeachment evidence affected the jury's verdict. Bagley, 472 U.S. at 682.

Accordingly, given the deferential standard dictated by the AEDPA, the state courts' adjudications that no suppression of evidence occurred and that any suppression was not material are not unreasonable findings and, because they are not rebutted by clear and convincing evidence, they are entitled to a presumption of correctness. The state court's ultimate disposition of Petitioner's Brady claim is therefore neither contrary to nor an unreasonable application of clearly established federal law. Thus, Petitioner's claim must be rejected and the petition for writ of habeas corpus must be denied.

## RECOMMENDATIONS

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus (Doc. 1), be DENIED.

///

///

1     These Findings and Recommendations are submitted to the United States District Judge
2  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of
3  the Local Rules of Practice for the United States District Court, Eastern District of California.
4  Within twenty (20) days after being served with a copy, any party may file written objections
5  with the court and serve a copy on all parties.  Such a document should be captioned "Objections
6  to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served
7  and filed within ten (10) court days (plus three days if served by mail) after service of the
8  objections.  The District Judge will then review the Magistrate Judge's ruling pursuant to
9  28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the
10 specified time may waive the right to appeal the District Judge's order.  Martinez v. Ylst, 951
11 F.2d 1153 (9th Cir. 1991).

13 IT IS SO ORDERED.
14 Dated:   **September 4, 2007**                              **/s/ Theresa A. Goldner**
                                                       UNITED STATES MAGISTRATE JUDGE